Scott M. Campbell, Bar No. 6-3969
Poulson, Odell & Peterson
1660 Lincoln Street, Suite 1500
Denver, Colorado
T: 303-861-4400
E: scampbell@popllc.com

*Attorney for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| DANIEL T RUETT NEESE; ALTATUDE 650, LLC, a Wyoming limited liability company; PREMIER WEST BUILDERS, INC., a Texas corporation; SCOTT FIELD; CLARISSA FIELD; and FIELD MINERALS, LLC, a Colorado limited liability company, <br><br> Plaintiff s, <br><br> vs. <br><br> LARRY R. MOYER; LARRY R. MOYER EXPLORATION, LLC, a Colorado limited liability company; STEPHEN SMITH; STEPHEN SMITH, INC., a Colorado corporation ; GOLDEN CREST II, LLC , a Wyoming limited liability company; JOHN AND JANE DOES -20; and BLACK AND WHITE CORPORATIONS 1 -20, <br><br> Defendants. | Case No.: 21-cv-00117-KHR |

## MOTION TO DISMISS COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(1) (STANDING AND RIPENESS) AND 12(b)(6) (FAILURE TO STATE A CLAIM)

## I.      INTRODUCTION

Defendants move to dismiss the Complaint.  Plaintiffs Daniel Truett Neese, Altatude 650, LLC, and Premier West Builders, Inc., (the "Neese Plaintiffs"), have filed claims for alleged violations of federal and state securities laws, common law fraud, breach of fiduciary duty, and violations of Colorado's Organized Crime Control Act, ("COCCA"), related to a project involving federal oil and gas leases and mining claims in Colorado, Nevada, South Dakota, and Utah. The project contemplated participants assuming a share of the costs to obtain and maintain the leases and mining claims, and to generate geologic information increasing their values, with the goal being the sale of those properties to third parties. The participants would then share proportionately in the profits from those sales. Plaintiffs Scott Field, Clarissa Field, and Field Minerals, LLC, (the "Field Plaintiffs"), participated only in the mining claims.

Wyoming law should apply instead of Colorado law. Wyoming does not have a state "little RICO" act like Colorado. Plaintiffs have also plead their remaining claims under the wrong substantive law.

Regardless, Plaintiffs have inadequately plead their claims. Plaintiffs have filed their claims in a vain attempt to avoid pursuing remedies in contract. This case has nothing to do with fraud or organized crime. Neither the allegations nor the attached and referenced documents state or imply that Plaintiffs were receiving "factional ownership interests" in the leases or mining claims. Plaintiffs are instead frustrated at the project pace and their inability to coerce other participants into giving them sole management and control.

## II.      WYOMING LAW INSTEAD OF COLORADO LAW GOVERNS

Plaintiffs assert that Defendants have "caused acts and events to occur within the state of Wyoming and this district out of which Plaintiffs' claims arise." (Complaint, ¶¶

10-13). The law of the place where the tort or wrong has been committed is the law that governs. *Jack v. Enterprise Rent-A-Car Co.*, 899 P.2d 891, 894 (Wyo. 1995). Wyoming law governs. Plaintiffs nonetheless allege statutory and tort claims under Colorado law. The Complaint must be dismissed under the law of either state for the reasons discussed below. The issue of whether Wyoming or Colorado law applies, however, is particularly applicable to Plaintiffs' COCCA claims because there is no Wyoming equivalent and Wyoming does not have a state version of RICO. *See* Wyo. Stat. Ann. Titles 1-42 (2021). Plaintiffs have inadequately plead a COCCA claim under Colorado law, (see Part IV.H. *infra*), and no such claim exists under Wyoming law. Plaintiffs' "racketeering," mail and wire fraud, and extortion claims must all be dismissed with prejudice.

## III.    STANDARD OF REVIEW

On a 12(b)(6) motion to dismiss, The Complaint must withstand the rigorous "plausibility standard" adopted in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The 64 year old *Conley v. Gibson* test permitting dismissal only where "it appears beyond doubt that the plaintiff can prove no set of facts" no longer applies. Instead, the factual allegations must demonstrate a right to relief "above the speculative level," and provide "plausible grounds" for relief. *Twombly*, 550 U.S. at 555. The "plausibility standard" is "underlain by two working principles." *Id.* "First, 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not "show[n]"--"that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. at 679.

*Twombly* illustrates this approach. There the plaintiffs alleged Sherman Act violations, 15 U.S.C. §1. *Twombly*, 550 U.S. at 548. The plaintiffs pleaded only that the defendants "ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d] agreed not to compete with one another." *Id.* at 551. The plaintiffs also alleged the defendants' parallel course of conduct to prevent competition and inflate prices was indicative of the unlawful agreement alleged. *Id.*

The Court held the complaint was deficient under Rule 8, first finding the allegation of an unlawful agreement was a "legal conclusion" and not entitled to the assumption of truth. *Id.* at 555. The Court next evaluated the well-pleaded, nonconclusory factual allegation of parallel behavior to determine whether it gave rise to a "plausible suggestion of conspiracy." *Id.* at 565-566. The Court concluded the allegation did not plausibly suggest an illegal agreement because it was not only compatible with, but was more likely explained by, lawful, unchoreographed free-market behavior—even while acknowledging that parallel conduct was consistent with an unlawful agreement. *Id.* at 567. Because the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement, the Court held the plaintiffs' complaint must be dismissed. *Id.* at 570.

*Twombly* was not a fraud case.  550 U.S. at 548-49. Therefore, the more stringent *Twombly* pleading requirements are even more rigorous under F.R.C.P. 9(b) when fraud is pled. The *Twombly* and F.R.C.P. 9(b) pleading requirements are elevated even higher in the securities fraud context. Plaintiffs' claims are premised upon alleged fraud and invoke Section 10(b) of the Securities Exchange Act. Section 10(b) makes it "unlawful for any

person . . . to use or employ, in connection with the purchase or sale of any security . . ., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j. Pursuant to this provision, the SEC promulgated Rule 10b-5 which forbids the use, "in connection with the purchase or sale of any security," of (1) "any device, scheme, or artifice to defraud"; (2) "any untrue statement of a material fact"; (3) the omission of "a material fact necessary in order to make the statements made . . . not misleading"; or (4) any other "act, practice, or course of business" that "operates . . . as a fraud or deceit." 17 CFR § 240.10b-5 (2021).

Plaintiffs must therefore prove one of the four kinds of manipulative or deceptive devices to which Rule 10b-5 refers in connection with the purchase or sale of a security. Plaintiffs must also allege "scienter," meaning "intent to deceive, manipulate, or defraud". *The Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 592-593 (2001). Section 101 of Colorado's Uniform Securities Act is substantially identical to Rule 10b-5 of the Securities and Exchange Commission. *People v. Riley*, 708 P.2d 1359, 1363 (Colo. 1985). Judicial authorities construing the federal counterparts are persuasive on interpretation of the Colorado's Act where not inconsistent with the plain language of the statute. *Rosenthal v. Dean Witter Reynolds*, 908 P.2d 1095, 1100 (Colo. 1995). Wyoming also looks to federal securities laws in interpreting the Wyoming Uniform Securities Act. *See Gaudina v. Haberman*, 644 P.2d 159, 165 (Wyo. 1982).

A Section 10(b) claim is a type of fraud claim. *In re Qwest Communs. Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1143, (D. Colo. 2005). The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes particular pleading requirements on complaints alleging securities fraud under § 10(b). *Id. citing* 15 U.S.C. § 78u-4(b)(1) and (2). The

PSLRA imposes a standard of pleading which is even more stringent than Rule 9(b). *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001).

> [T]he PSLRA requires the plaintiffs 1) to specify each statement alleged to have been misleading, and the reason or reasons the statement is misleading; and 2) with regard to each act or omission alleged to violate § 10(b), to state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind, i.e. scienter. *See, e.g., Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1186 (10th Cir. 2003). Courts must look to the totality of the pleadings to determine whether the . . . allegations support a strong inference of fraudulent intent, or scienter, as required by the PSLRA. *Fleming*, 264 F.3d at 1262. . . . a strong inference of scienter is "a conclusion logically based upon particular facts that would convince a reasonable person that the defendant knew a statement was false or misleading." *Adams v. Kinder Morgan, Inc.*, 340 F.3d 1083, 1105 (10th Cir. 2003). . . .

*Qwest Communs.*, 387 F. Supp. 2d at 1144.

> When considering the adequacy of an inference of scienter under the PSLRA, a court must consider negative inferences *which may be drawn against the plaintiff*. *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1187 -- 88 (10th Cir. 2003). In other words, a court must evaluate a plaintiffs [sic] suggested inference in the context of other reasonable inferences that may be drawn from the facts alleged. *Id.* The inference of scienter suggested by the plaintiff must be strong in light of the overall context of the allegations, including reasonable inferences against the plaintiff's position. *Id.*

*Id.* (emphasis added).

This analysis also applies to the COCCA claim. The Colorado Supreme Court has adopted *Twombly* and directed Colorado courts to "weed[] out groundless complaints at the pleading stage" which assert implausible claims and erroneous legal conclusions. *Warne v. Hall*, 373 P.3d 588, 594 (Colo. 2016). Plaintiffs also allege the same securities laws violations as a predicate act. (Complaint, ¶ 170). The alleged wire/mail fraud predicate acts are in turn premised upon the same alleged securities violations. (Complaint, ¶¶ 171-73). Plaintiffs' complaint is subject to the heightened PSLRA scrutiny identified above.

## IV.    THE PREDICATE FRAUD CLAIM HAS NOT BEEN PROPERLY PLEAD

Mere nonperformance of a promise to do something at a future time is not fraud. *Nelson v. Gas Research Institute*, 121 P.3d 340, 343 (Colo. App. 2005); *In re Adoption of Hiatt*, 242 P.2d 214, 216 (Wyo. 1952). A promise is fraudulent only if there was an intent at the time of the promise to not fulfill the promise. *Kinsey v. Preeson*, 746 P.2d 542, 551 (Colo. 1987); *Meyer v. Ludvik*, 680 P.2d 459, 463 (Wyo. 1984).

A.    <u>Plaintiffs Failed to Support Their Allegations Regarding</u>
<u>Alleged Representations of Fractional Interest Ownership</u>

All the claims are predicated upon two alleged representations: Plaintiffs would receive a fractional ownership interest in the properties "of the Project," and "membership in the joint venture, with concomitant participation in the upside profits of the Project." (Complaint, ¶ 32). For Counts One and Two, (Federal and State securities fraud), ¶¶ 143, 147, there are no allegations identifying the fraudulent conduct. Plaintiffs' earlier allegations therefore provide the alleged facts for claiming fraud. For Count Three, (Breach of Fiduciary Duty), Plaintiffs allege only that "Smith, Moyer, LRME, and SSI breached that fiduciary duty." (*Id.* at ¶ 154). There are no allegations identifying the breached duties in Count Three.  Plaintiffs' earlier allegations therefore provide the alleged facts for Count Three. In Count Four, (Common Law Fraud), Plaintiffs allege the "false representation of material fact was the fractional interest representation" (*Id.* at ¶ 158). Count Five, (COCCA), alleges the predicate acts are securities fraud under the Colorado securities act, wire fraud under of the Federal RICO Act, and "extortion" under the Federal RICO Act, (*id.* at ¶ 170), based on the "false fractional interest representation." (*Id.* at ¶ 171).

Neither the law nor the alleged facts demonstrate an alleged promise that Plaintiffs would receive "fractional ownership interests" in the Project properties. Plaintiffs also have not alleged the requisite scienter or extortion to support their COCCA claim.

### 1.    *Oil and Gas Lease Development Project*

The Neese Plaintiffs allege Smith orally informed Plaintiff Neese that he would receive fractional ownership interests in the leases. (Complaint, ¶ 48). Oil and gas leases are real property interests. *E.g. Maralex Res., Inc. v. Chamberlain*, 320 P.3d 399, 403 (Colo. App. 2014) (oil and gas leases are real property in Colorado and the majority of western states); *Torgeson v. Connelly*, 348 P.2d 63, 69 (Wyo. 1959). This alleged oral statement violates the statute of frauds in all relevant jurisdictions. C.R.S. § 38-10-108 (2021); Nev. Rev. Stat. Ann. § 111.205 (2021); S.D. Codified Laws § 53-8-2 (2021); Utah Code Ann. § 25-5-1 (2021). Moreover, none of the documents cited by the Neese Plaintiffs reflect an agreement to assign fractional ownership interests. (See discussion *infra*).

Under *Twombly*, the first step to determine whether Plaintiffs' factual allegations demonstrate a right to relief "above the speculative level" and provide "plausible grounds" for relief is to identify allegations which "are no more than conclusions" and therefore not entitled to the assumption of truth. *Ashcroft*, 556 U.S. at 680-81 (allegations that petitioner "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest" amounted to nothing more than an inadequate "formulaic recitation of the elements" of a constitutional discrimination claim). Plaintiffs' Complaint is replete with such conclusory allegations: (*E.g.* Complaint, ¶¶ 30 (Defendants intended to maintain managerial control and designed the project so Plaintiffs would need to rely upon Defendants); 32, (Defendants acted in concert to

persuade members of the public to become Project participants); 39, 43, 50, 70, 96, 115 (Defendants knew assignments of real property interests must be filed with the BLM for approval); 48 (Defendant Smith made oral representations about fractional interest assignments on behalf of all other Defendants); 54, 121 (Defendants created binder intending that it reflect the fractional interest representation); 76, 102, 124 (Defendants used invoices to induce reliance on fractional interest representation); 78, 91, 104, 124 (monthly invoices are based upon the false representation that the participant has a fractional interest in the leases). None of these allegations deserve an assumption of truth.

The second step is to review the factual allegations to determine if they plausibly suggest an entitlement to relief. *Ashcroft*, 556 U.S. at 681. Those allegations must also meet the additional standards of F.R.C.P. 9(b). The Neese Plaintiffs allege the self-styled "Promotional Binder," (Complaint, ¶ 53), "contains narrative descriptions of the opportunity being offered to the Neese parties, including the fractional interest representation." (*Id.* at ¶ 56). Plaintiffs further allege a January 30, 2017 email "confirmed" the statements in the telephone call and binder "including the fractional interest representation." (*Id.* at ¶¶ 65-66). A review of the binder (attached as Exhibit 1 to the Complaint) and email demonstrate, however, the conclusory nature of the Neese Plaintiffs' allegations, and the fact that no such representations were made.

An exhibit to the complaint is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal. *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). The "legal effect of the documents" referenced in the Complaint "is determined by their contents rather than by allegations in the complaint," and the "court is not required to

accept legal conclusions or factual claims at variance with the express terms of documents." *Stauffer v. Stegemann*, 165 P.3d 713, 716 (Colo. App. 2006).

Plaintiffs attached the "Colorado Plateau and Great Basin Paleozoic Sourced Oil Project" as Exhibit 1 to the Complaint. Exhibit 1 provides in pertinent part: "We have prepared a simple spreadsheet which is attached, laying out the cash requirements for a 1/8 interest in the <u>program</u> over the two year period." (Complaint, Ex. 1, at 3 of 93 (emphasis added)). The phrase "fractional ownership interest" and similar phrases do not appear in Exhibit 1. The referenced "Land Proposal," (Complaint, ¶¶ 57-59), similarly discusses a "project" in which participants will have "a right to recover <u>their</u> prospect and buy area specific costs in properties, data and expenses from <u>the sale of interests in the properties .</u> <u>. . .</u>" (Complaint, Ex. 1, at 4 of 93 (emphasis added)). The sentence does not state Plaintiffs will receive "their" costs from a sale of "their" properties. (*Id*.) It says they will receive "their" costs from the sale of "the" properties. (*Id.*)

Moreover, no documents cited by Plaintiffs contain words of grant which would communicate an intent or agreement to deliver a fractional ownership interest. *E.g. McLeod v. Colorado Power Co.*, 208 P. 463, 464 (Colo. 1922) (rejecting real property claim because there were no words of grant.) Similarly, the following words are absent from Exhibit 1, Exhibit 2, and the January 30, 2017 email: "sell,' "convey," "assign," "transfer," "quitclaim," and/or their synonyms, and the phrase "fractional ownership interest."

Plaintiffs "ownership of a fractional interest" in the oil and gas leases themselves is also not necessary for Defendants to fulfill a promise that Plaintiffs would participate "in the upside profits of the Project," which is the second representation alleged to have been

made by the Plaintiffs. (See Complaint, ¶ 32). Defendants admit Plaintiffs have a right to participate "in the upside profits of the Project"—when realized.

Even if the factual allegations met the requirements of F.R.C.P. 9(b), they still fail to meet the second step in the *Twombly* standard of review. The *Ashcroft* Court held that allegations that Arab and Muslim men, identified as persons of "high interest," were being detained because of race, religion, or national origin, could not survive a motion to dismiss. *Ashcroft*, 556 U.S. 681. It was equally plausible those post-September-11 detainees were being detained in the most secure conditions available until the suspects could be cleared of terrorist activity. *Id.* at 683. In this case, it is equally plausible no assignments of fractional interests were contemplated or made because such assignments are unnecessary to Plaintiffs realizing a profit from the sale of any leases or mining claims.

### 2. Mining Claims Development Project

The Neese Plaintiffs and the Field Plaintiffs' allegations regarding the mining claims are fundamentally no different than the allegations regarding the oil and gas leases. (*Compare* Complaint, Parts IV.B, C., D. (Neese Plaintiffs' oil and gas lease claims) *with* E., F., (Neese Plaintiffs' mining claim claims); G., H., (Field Plaintiffs' mining claim claims)). Plaintiffs' Complaint should be dismissed.

### B. Plaintiffs Failed to Support Their Allegations Regarding Alleged Fraudulent Intent

Plaintiffs' allegations also fail the relevant high pleading standards for alleging fraudulent intent. This case should be dismissed with prejudice.

### 1. Oil and Gas Lease Development Project

Plaintiffs conclude the alleged fractional ownership interest representation was false because they believe Defendants never intended to make those assignments. (*Id.* at ¶¶

40 (oil and gas leases), 44 (mining claims)). Plaintiffs' alleged proof of scienter, however, is limited to just one alleged fact: No assignments of fractional interests have been made. (*Id.* at ¶¶ 46, 51). The Complaint does not allege that Plaintiffs demanded an assignment, that Defendants refused to make any assignments, or that Defendants are unable to make such assignments. (Complaint, *passim*).

Plaintiffs' conclusory allegations regarding intent do not meet the more stringent PSLRA requirements of pleading particular facts "giving rise to a strong inference that the defendant acted with the required state of mind, i.e. scienter." *Qwest Communs.*, 387 F. Supp. 2d at 1144 (citations omitted). A strong inference of scienter is "a conclusion logically based upon particular facts that would convince a reasonable person that the defendant knew a statement was false or misleading." *Id.* (citations omitted). Moreover, when considering the adequacy of an inference of scienter under the PSLRA, "a court must consider negative inferences which may be drawn against the plaintiff. In other words, a court must evaluate a plaintiffs [sic] suggested inference in the context of other reasonable inferences that may be drawn from the facts alleged." *Id.*

First, Plaintiffs' allegations do not even withstand the lesser *Twombly* scrutiny. Similar to *Twombly*, the facts as plead by Plaintiffs are "not only compatible with, but [are] more likely explained by, lawful" behavior. *Twombly*, 550 U.S at 567. Under *Twombly* and *Qwest Communs.* it is also eminently reasonable for the Court to alternatively infer that no assignment of interests in the oil and gas leases was promised or required because: (1) the cited documents contemplate the leases were going to be sold to third parties (not kept by any participant), (2) assignments of the oil and gas leases to Plaintiffs are not a necessary predicate to Plaintiffs claiming their share of any sale proceeds as part of the project, (3)

there are no alleged legal or factual impediments to making such assignments in any event, (4) Plaintiffs have not alleged any such sales were made and they were denied their share of the sales proceeds, and (5) Plaintiffs clearly have a right to share in the proceeds of any such sale. Nothing "wrong" has been alleged.

### 2. *Mining Claims Development Project*

Plaintiffs' mining claims allegations are fundamentally identical to the lease allegations. (*Compare* Complaint, Parts IV.B, C., D. (Neese Plaintiffs' oil and gas lease claims) *with* E., F., (Neese Plaintiffs' mining claim claims); G., H., (Field Plaintiffs' mining claim claims)). Plaintiffs' Complaint should be dismissed with prejudice.

### C. Plaintiffs Failed to Support Their Allegations of Reasonable Reliance

Plaintiffs' oil and gas lease and mining claim causes of action also fail the relevant high pleading standards for alleging reasonable reliance.

### 1. *Oil and Gas Lease Development Project*

The Neese Plaintiffs allege that invoices for program costs "continued to falsely represent that the Neese Parties <u>owned</u> a 1/8th fractional interest in the oil and gas leases of the Project." (Complaint, ¶ 91 (emphasis added)). The Neese Plaintiffs again allege they believed they already "owned a fractional interest in the oil and gas leases and mining claims" which led them to pay "$334,046.905." (*Id.* at ¶ 109). These conclusory allegations are unsupported by any facts. The invoice referenced in paragraphs 85-86 is for "project" costs. (*Id.* at Ex. 2). Plaintiff "Altatude" (not the other Neese Plaintiffs) was invoiced for project lease filing fees and rental fees. (*See id*.) There are no references to anybody being an "owner" of anything. The invoice does not purport to be a bill of sale. The invoice does nothing more on its face than bill participants for their share of the project costs.

And while Plaintiffs intermittently allege that Defendants knew any assignments would need to be filed with the BLM, the Plaintiffs nowhere allege that Plaintiffs reasonably believed such assignments had in fact been made (despite allegations of such assignments having never been provided to Plaintiffs). Plaintiffs also never allege that Defendants told them any assignments were in fact made.

Plaintiffs' alleged belief that they already "owned" fractional interests begets only two possibilities of how Plaintiffs came to their conclusory "reasonable beliefs." Either Plaintiffs believed Exhibit 1 and alleged oral statements legally effectuated such an assignment, or Plaintiffs believed the assignments were properly memorialized and filed even though nobody told Plaintiffs that occurred and even though Plaintiffs were never provided with evidence of such assignments.

Neither "belief" is reasonable. As for the first possibility, the Plaintiffs cannot circumvent the statute of frauds by claiming reliance on alleged oral fraudulent statements completely unsupported by the identified documents. The very purpose of the statute of <u>frauds</u> is to protect alleged vendors from exactly these types of fraud claims. *E.g. Parkhurst v. Boykin*, 94 P.3d 450, 457-458 (Wyo. 2004) ("Enforcement of the statute of frauds serves significant policy concerns: <u>The statute of frauds was enacted to prevent fraud</u>, not to aid it, and should receive a reasonable interpretation with that end in view.) (emphasis added) (citation omitted); *Davis v. Davis*, 855 P.2d 342, 346 (Wyo. 1993) ("If the mere failure to perform an oral contract were sufficient to remove it from the reach of the statute of frauds, the statute would be rendered vain and nugatory. The breach of an oral contract does not suffice to demonstrate fraud, which would justify a failure to follow the statute of frauds in order to prevent fraud.") (citation omitted).

It is equally true that Plaintiffs could not have reasonably believed an actual assignment was made, based on these allegations and the *Twombly* and *Qwest Communs.* pleading standards. The Plaintiffs have not alleged any misrepresentations that an assignment was in fact made. Plaintiffs also admit no such assignments were delivered to them. The cited documents also do not state any assignments to Plaintiffs would be made. The Neese Plaintiffs would have this court believe they paid $334,046.95 to Defendants despite no alleged statements from the Defendants that any assignments had been made, and despite there being no delivery of any assignments to the Plaintiffs—for over four years. Plaintiffs' claims are implausible.

2.      *Mining Claims Development Project*

The mining claims allegations are fundamentally no different than the leasing allegations. (Compare Complaint, Parts IV.B, C., D. (Neese Plaintiffs' oil and gas lease claims) with E., F., (Neese Plaintiffs' mining claim claims); G., H., (Field Plaintiffs' mining claim claims)). Unpatented mining claims are also interests in real property, *e.g. United States v. Friedland*, 152 F. Supp. 2d 1234, 1245 (D. Colo. 2001), and similarly subject to the statute of frauds.  Plaintiffs' Complaint should be dismissed with prejudice.

D.      Plaintiffs Claims are Barred by the Statutes of Limitations

Plaintiffs assert Colorado law applies to these tort actions. All actions for fraud, misrepresentation, concealment, or deceit are barred after three years. C.R.S. § 13-80-101(1)(c). This three year statute of limitations also applies to Plaintiffs' state securities claims. *Norton v. Leadville Corp.*, 610 P.2d 1348, 1349-1350 (Colo. Ct. App. 1979). Breaches of fiduciary duty are similarly subject to a three year statute of limitations. C.R.S. § 13-80-101(1)(f). In Wyoming, the statutes of limitations is four years for fraud, Wyo. Stat. Ann. § 1-3-105(a)(iv)(D), four years for breach of fiduciary duty, § 1-3-105(a)(iv)(C);

and either a one year statute or repose, or the earlier of a two year statute of limitations or a five year statute of repose, depending on the nature of the alleged violation of Wyoming's Uniform Securities Act. Wyo. Stat. Ann. § 17-4-509(k). Federal securities claims based on fraud are subject to a two year statute of limitations upon discovery of the fraud, and a five year statute of repose after the fraud violation. 28 U.S.C. § 1658.

For securities claims, the statutes begin to run when the defrauded person has knowledge of facts which would, in the exercise of proper prudence and diligence, enable discovery of the fraud. *E.g. Norton*, 610 P.2d at 1349-1350. Plaintiffs allege the "ongoing repetition of the false fractional interest representation," (*i.e.*, project cost invoices devoid of any ownership references), led them to be "justifiably unaware" the representation was false until August 26, 2020. (Complaint, ¶¶ 132-135). These are nothing more than legal conclusions which are not entitled to any deference. *Twombly*, 550 U.S. at 555.

Plaintiffs' assertion is also implausible under the pleaded facts and documents. Plaintiffs allege they believed they already owned fractional interests when they funded the projects, (Complaint, ¶¶ 91, 109), on or about Jan. 30, 2017 for the Neese Plaintiffs and the leases, and "April 2017" for the mining claims, (*id.* at ¶¶ 65), and "early 2017" for the Field Plaintiffs and the mining claims. (*Id.* at ¶ 111). The statute of frauds bars reliance on Defendants alleged oral statements. (Part IV.C.1., *supra*). Moreover, the allegations reflect that no assignment documents were provided to Plaintiffs, (Complaint, ¶¶ 41, 98), there are no allegations that Defendants told Plaintiffs such assignments had been made and filed, and Plaintiffs have failed to identify any document that refers to them as "owners" of any real property. (*See Id.*, Exhibits 1 and 2). The notion that Plaintiffs were duped into paying "in excess of $400,000," (*Id.* at ¶ 145), without ever asking for ownership evidence

for four years, and relied instead on invoices which billed them for just project costs, does not pass the test of pleading a plausible claim. The facts instead plausibly demonstrate a failure to exercise prudence or diligence. All of Plaintiffs' fraud claims (Counts 1-4) must be dismissed with prejudice as barred by applicable statutes of limitations.

E.   Plaintiffs Have Failed to Allege their Performance
     with All Conditions Precedent to Filing this Action

Plaintiffs must allege compliance with all conditions precedent to the filing of their action. F.R.C.P. 9(c); *E. River Const. Corp. v. D.C.*, 183 F. Supp. 684, 685 (D.D.C 1960). Failure to do so results in dismissal of the complaint. *E. River Const. Corp. v. D.C.*, 183 F. Supp. at 685. Plaintiffs have not alleged compliance with, or performance of, any conditions precedent. Plaintiffs' claims must therefore be dismissed.

F.   Unnamed Defendants Must be Dismissed

Plaintiffs have named as additional defendants "Jane Does 1-20" and "Black and White Corporations 1-20". (Complaint, Caption). The only time those defendants are referenced in the Complaint is in the case caption. The Complaint must be dismissed against the unnamed defendants because there are no allegations addressing them. *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (unnamed defendants dismissed because there were no allegations regarding the unnamed defendants).

G.   Plaintiffs Daniel Truett Neese, Premier West Builders, Inc.
     and Field Minerals, LLC, must be Dismissed because they
     are Not Real Parties in Interest with Standing

An action must be prosecuted in the name of the real party in interest. F.R.C.P. 17(a)(1). Plaintiffs must also prove standing. On a motion to dismiss, the court may look beyond the four corners of the Complaint, including affidavits submitted by the Parties, to resolve the issue of standing. *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th

Cir. 2013). The motion is not converted to a motion for summary judgment. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

The Complaint alleges only that Plaintiff Altatude 650, LLC agreed to take a "1/8 share of the above project . . . ." (Complaint, ¶ 65). Every other allegation is generically phrased to include all three of the "Neese Parties" but there are no allegations explaining how or when Plaintiffs Dan Truett Neese and Premier West Builders, Inc. allegedly became participants. Plaintiff has failed to adequately plead a claim on behalf of those two Plaintiffs. Plaintiff Field Minerals, LLC must also be dismissed for identical reasons. Plaintiffs allege the "Field Parties" received 40 separate invoices from April 2017 through February 2021. (Complaint, ¶ 123). "[A] court is permitted to consider a document that was referred to in, but not attached to, the complaint without converting the motion to dismiss into a motion for summary judgment." *See Yadon v. Lowry*, 126 P.3d 332, 336 (Colo. App. 2005). All 40 invoices were addressed only to the individual Field Plaintiffs. (*E.g.* Exhibit "4-D"). There are no allegations explaining how Field Minerals, LLC became a participant. Plaintiff has failed to plead a claim on behalf of Field Minerals, LLC.

Moreover, Neese individually, Premier West Builders, Inc., and Field Minerals, LLC have never been invoiced for project costs, and the Defendants have never received a payment from any of those Plaintiffs. (Exs. "3" and "4", Affids. of Moyer and Smith, ¶¶ 2-6). Plaintiffs are inappropriately attempting to bolster their COCCA claims by artificially escalating the number of allegedly affected participants. Plaintiffs Dan Truett Neese, Premier West Builders, Inc., and Field Minerals, LLC must instead be dismissed.

     H.      The COCCA Claims Must be Dismissed because
                Plaintiffs' Allegations of Extortion are Legally Insufficient

The COCCA claims must be dismissed because Wyoming law instead of Colorado law applies. (See Part II, *supra*). The COCCA claims must also be dismissed even if Colorado law applies.

Plaintiffs allege "[t]he racketeering activity of Smith, Moyer, LRME and SSI under § 18-17-103(5), C.R.S. (2020) consisted of the following predicate acts: (1) securities fraud in violation of Section 11-51-501, C.R.S. (2020); (2) wire fraud in violation of 18 U.S.C. § 1343; and (3) extortion in violation of 18 U.S.C. § 1951. (Complaint, ¶ 170). Defendants have already demonstrated the alleged predicate fraud acts should all be dismissed.

The alleged "extortion" is a conclusory allegation that participants were "unlawfully coerced" to pay invoices under threat of termination of "the participant's fractional ownership interests." (*Id.* at ¶¶ 80, 107, 129, 174). There are no allegations of who made those alleged threats, how or when those alleged threats were made, or whether those alleged threats were oral and/or written. *See Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986). Plaintiffs must set forth the who, what, where, when and how of the alleged fraud. *Gottstein v. National Ass'n for the Self Employed*, 53 F. Supp. 2d 1212, 1223 (D. Kan. 1999). "Furthermore, when fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant." *Id.* (citations omitted). Plaintiffs' repeated allegation fails to meet the particularity requirements for pleading fraud under F.R.C.P. 9, *Twombly* and its progeny, and fails to set forth the "who, what, where, when and how" as to each separate Defendant.

Moreover, the pleadings and the cited documents demonstrate that if Plaintiffs failed to pay their share of the invoices, then there would not be enough money for the

group participants to pay the total rent due, resulting in the oil and gas leases and mining claims <u>automatically</u> terminating by operation of law, thereby wiping out everybody's investment—not just the Plaintiffs' investment. For example, the first oil and gas lease in Exhibit 1 states it is for a 10 year term with an annual rental of $3,603.00. (Complaint, Ex. 1, 54 of 93). A failure by Plaintiffs to pay their share of the costs would therefore result in lease termination for failure to make the full rental payment. The leases specifically state they are issued subject to, *inter alia*, "the Secretary of the Interior's regulations . . . ." (*Id.*) Those regulations state in pertinent part: "Failure to make timely payment shall cause a lease to terminate automatically by operation of law." 43 CFR 3103.2-2 (2021). The Exhibit 1 oil and gas leases also prominently state: "Future rental payments must be made on or before the anniversary date to: Office of Natural Resources Revenue (ONRR) http://www.onrr.gov/ReportPay/payments.htm".

Plaintiffs' allegations further demonstrate they were well aware they would be invoiced for their share of the rental costs for both leases and mining claims. (See Complaint, ¶ 60 (The Two Year Budget in Exhibit 1 "contains specific line items for 'open land filings' and 'delay rentals.'")) Plaintiffs Complaint demonstrates they assumed and understood that risk. Accordingly, there was no "extortion" or "coercion".

Mining claimants are also required to pay an annual maintenance fee akin to rent. The failure of a mining claimant to make the required annual rental payments invalidates the claims. *I.M. and Robert L. Clausen*, 7 IBLA 286, 286 (1972).

Plaintiffs premise their COCCA claim on an alleged "extortion" claim specifically in violation of 18 U.S.C. § 1951. (Complaint, ¶ 170). Federal RICO defines "extortion" as "obtaining of property from another, with his consent, induced by <u>wrongful use</u> of actual

or threatened <u>force</u>, <u>violence</u>, or <u>fear</u>, or <u>under color of official right</u>." 18 USCS § 1951(b)(2) (2021) (emphasis added). "Wrongful use" means the plaintiff must prove the defendant had no lawful right to claim the money. *United States v. Sturm*, 870 F.2d 769, 773 (1st Cir. 1989). "Force" and "violence" mean "physical force" or "violent force," *see United States v. Gooch*, 850 F.3d 285, 291-92 (6th Cir. 2017), and such force must be "capable of causing physical pain or injury to another person." *See United States v. Thomas*, 849 F.3d 906, 909 (10th Cir. 2017). "Fear" includes creating a fear of economic loss. *United States v. Capo*, 817 F.2d 947, 951 (2nd Cir. 1987). "Under color of official right" means someone holding official powers and responsibilities. *United States v. Freeman*, 6 F.3d 586, 594 (9th Cir. 1993) (an "ordinary person would understand the statute to mean that the misuse of official responsibilities and powers is unlawful.")

Plaintiffs have not alleged wrongful actual or threatened force, violence, or that Defendants were wrongfully acting under color of official right. Plaintiffs' extortion claim therefore fails unless they can satisfactorily allege the use of economic fear to wrongfully obtain property in which Defendants <u>subjectively</u> believed they had no claim, in a circumstance where Defendants would cause the economic harm. Plaintiffs' allegations are inadequate on all counts.

First, in cases involving extortion based on economic fear, Plaintiffs must allege the Defendants <u>knew</u> they were not legally entitled to the property received. *Sturm*, 870 F.2d at 774. This requires that Plaintiffs allege not only that the Defendant did not have a claim of right to the property, but that Defendants <u>knew</u> they were not legally entitled to the property. *Id.* No such allegations were made. The allegations also are not permitted to be conclusory for all the reasons already discussed above. Regardless, the documents

attached to the Complaint disclosed that Plaintiffs would be paying their proportionate share of rental costs, in lieu of which the interests would automatically terminate. Plaintiffs' Complaint does not plausibly allege extortion.

Second, any alleged loss of Plaintiffs' investment would be caused by the BLM terminating the leases and mining claims, not the Defendants. For example, in *United States v. Ruedlinger*, 990 F. Supp. 1295 (D,. Kan. 1997), the district court held <u>on a motion to dismiss</u> there could be no extortion because the harm in the face of economic fear would not be caused by the defendant, even if the defendant sought to create and exploit economic fear. *Id.* at 1301-1302. The defendant insurance agents sent a letter to the school district stating its insurance coverage for injured students was inadequate to cover potential damages, meaning the school would be sued by injured students for damages in excess of policy limits. *Id.* 1299-1300. The complaint further alleged the letter "went on to entreat, persuade and entice the recipient to avoid being sued by contacting The Fund Insurance Company of Bermuda as the only company who could support adequate insurance." *Id.* at 1300. The district court held the extortion allegations were insufficient because the threat of lawsuits was from third parties, their students, not from the defendants. *Id.* at 1302.

The same is true here. As already demonstrated, Plaintiffs' allegations and cited documents demonstrate the BLM would cancel the leases and mining claims if full rental payments were not made—not the Defendants. Moreover, it was legally unreasonable for the Plaintiffs to believe the Defendants would cause the lease termination if Plaintiffs failed to pay their proportionate share of costs. Neither the allegations nor attached documents reflect an <u>obligation</u> of Defendants to assume Plaintiffs' share of the project. (*See* Complaint, and Exs. 1, 2, *passim*). There is accordingly no reason to believe that

Defendants could or would impair Plaintiffs rights if Plaintiffs refused to pay their share of the costs. Plaintiffs' extortion claims are invalid as a matter of law.

Plaintiffs' COCCA claims also cannot be predicated upon allegations of federal security fraud because the Private Securities Litigation Reform Act of 1995 (PSLRA) amended RICO to eliminate securities fraud as a predicate act except where the defendant has been criminally convicted of the securities fraud. 18 U.S.C. § 1964(c) (2021).

Plaintiffs' Complaint is riddled with other conclusory allegations unsupported by any underlying factual detail which should be ignored by this court. For example:

Plaintiffs' paragraphs 28, 69, 171, and 172 all make allegations regarding various unidentified persons. (Complaint, ¶¶ 28, 69, 171, and 172). These allegations are untestable, naked, and unqualified statements of purported knowledge, *i.e.* not based "upon information and belief," which despite that purported knowledge, fail to provide any detail such as the identity of any persons or where they were located (important to Plaintiffs' conclusory allegations of use of mail and telephone lines), and fail to state how many persons were involved. Once again, Plaintiffs have failed to allege the "who, what, when, where and how" separately as to each Defendant. Plaintiffs' Complaint must be dismissed.

Plaintiffs' allegations that participants were just "passive investors" are also mere legal conclusions unsupported by any well plead facts. (*Id.* at ¶¶ 1, 28, 47, 110). Exhibit 1 also states the opposite: "We want to do a <u>very collaborative</u> project, with a really good group of people." (*Id.*, Ex. 1, at 3 of 93 (emphasis added); *see also* Exs. "3-C," "3-D").

I.    <u>Assignment to Golden Crest II, LLC Issues</u>

Plaintiffs' claims arising from the assignment of mining claims to Golden Crest II, LLC must be dismissed under F.R.C.P. 12(b)(1) because the issues are not ripe for

adjudication. Plaintiffs' claims must also be dismissed under F.R.C.P. 12(b)(6) because they fail the *Twombly* standard of review.

Plaintiffs allege that a transfer of 241 mining claims to Golden Crest II, LLC "was not an arms-length transaction and was for less than reasonably equivalent value," which was then followed by execution of a contract with Solitario Zinc Corp., alleged to be an usurpation of a project opportunity being negotiated between the project and Solitario. (Complaint, ¶¶ 136-141).

It is unclear where or how this subset of allegations fits into Plaintiffs' Counts 1-5. Counts 1-2 are both styled as "Securities Fraud" claims and Count Four is a "Common Law Fraud" claim. There are no allegations of intentional misrepresentation or reasonable reliance on those representations relevant to transfers of mining claims to Golden Crest II, LLC. Counts 1-2, and 4 should therefore be dismissed as to this subset of allegations.

Count Five is a COCCA claim. Breaches of fiduciary duty, and more specifically, usurpation of business opportunities, are not included in the state definition of a "racketeering activity," *see* C.R.S. § 18-17-103(5)(b), or the federal definition of racketeering as incorporated by the COCCA at C.R.S. Section 18-17-103(5)(a). *See Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 223 F.R.D. 566, 611 (D. Kan. 2004) ("RICO does not cover business deal gone sour even if there is a thwarted deal accompanied by breach of fiduciary duty and other torts"). Plaintiffs also excluded the usurpation of a business opportunity as a predicate act. (*See* Complaint, ¶ 170, identifying other predicate acts as foundation for COCCA claims).

Count Three is a "Breach of Fiduciary Duty" claim. A claim for breach of fiduciary duty is a tort. *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1056 (Colo. 1995).

Count Three is the only claim arguably applicable to Plaintiffs' allegations of usurpation of business opportunities. The elements of breach of fiduciary duty are: 1) the defendant was acting as a fiduciary of the plaintiff; 2) defendant breached his duty as the plaintiff's fiduciary; and 3) the plaintiff incurred damages as a result of that breach. *Taylor v. Taylor*, 381 P.3d 428, 431 (Colo. App. 2016).

1.    *Plaintiffs' business usurpation claims are not ripe*

Ripeness bears on the court's subject matter jurisdiction and is therefore reviewed as Rule 12(b)(1) motion to dismiss. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995). A claim is not ripe if it rests upon contingent future events that may not occur as anticipated or occur at all. *Texas v. United States*, 523 U.S. 296, 300 (1998). The movant may facially attack subject matter jurisdiction allegations, and present evidence to challenge the factual basis upon which subject matter jurisdiction rests without converting the motion to one for summary judgment. *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). The court does not presume the truthfulness of the factual allegations and may consider affidavits or other documents to resolve jurisdictional facts. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). The burden of establishing subject matter jurisdiction is on the Plaintiffs. *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

There are no allegations that mere record title ownership of the interests by Golden Crest II, LLC, (in which Plaintiffs neither reasonably expected nor had a fractional record title ownership), was claimed or deemed to be beyond the reach of the project participants. Golden Crest II, LLC holds mere record title to the mining claims on behalf of project participants.  (Ex. "3", Moyer Affid., ¶ 9, Exs "3-C" at 4, and "3-D" at 4 (inquiring whether Plaintiffs wish to "continue to participate in the Golden Crest Prospect" or receive a "full

refund."); Smith Affid., ¶ 9).  There are no allegations the Solitario lease opportunity with the project was better than the lease signed between Golden Crest II, LLC and Solitario. Indeed, the lease between Golden Crest II, LLC and Solitario is the same lease with Solitario that Plaintiffs, acting on behalf of the project, had previously negotiated and approved. (Exs. "3" and "4", Affids. of Moyer and Smith, ¶¶ 7-9, Exs. "3-A"—"3-D," "4-A"—"4-B").  Moreover, the Plaintiffs were credited by Golden Crest II, LLC their share of the initial Solitario payments under the mining lease, against Plaintiffs' share of the costs to date. (Ex. "3", Moyer Affid., Exs. "3-C" and "3-D").

A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. *Texas v. United States*, 523 U.S. at 300. Plaintiffs' claims are not ripe unless and until Plaintiffs are denied their proportionate share of the profits from the Solitario lease by virtue of the mining claims being held by Golden Crest II, LLC.

2.  *Plaintiffs' business usurpation claims*
*must be dismissed under Twombly*

First, Plaintiffs' allegations that they were entitled to a fractional ownership in the mining claims themselves are inadequate as demonstrated above and therefore cannot provide a basis for a breach of fiduciary duty claim.

Second, there are no allegations that the resulting lease between Golden Crest II, LLC and Solitario is worse than the lease which was allegedly being negotiated by the project and Solitario. There are no allegations that the unrealized lease would have resulted in a better lease, or which terms were more advantageous or disadvantageous.  Plaintiffs therefore have not alleged any causation resulting in damages.

## V. CONCLUSION

Plaintiffs have inadequately plead their claims under Colorado law and Wyoming law. Plaintiffs filed their claims in a vain attempt to avoid pursuing remedies in contract. This case has nothing to do with fraud or organized crime. Neither the allegations nor the attached and referenced documents state or imply that Plaintiffs were receiving "factional ownership interests" in the leases or mining claims. Plaintiffs are instead frustrated at the project pace and their inability to coerce participants into giving them sole management and control. Plaintiffs' claims should all be dismissed with prejudice.

POULSON, ODELL & PETERSON, LLC

By: _____
Scott M. Campbell, Esq., Bar No. 6-3969
Poulson, Odell & Peterson, LLC
1660 Lincoln Street, Suite 1500
Denver, Colorado 80264
Phone:          (303) 861-4400
Facsimile:     (303) 861-1225
E-mail:         scampbell@popllc.com

Attorneys for Defendants/Counterclaimants

This document was filed via CM/ECF pursuant to U.S.D.C.L.R 5.2(a).

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of September, 2021, I delivered via the CM/ECF system one electronic copy of the above and foregoing addressed to the following:

Richard R. Thomas, Bar No. 31912
SMITH LC
Post Office Box 8729
Jackson, Wyoming 83002
T: 307-201-6000
E: rthomas@smith-lc.com

Jon McDonald